UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KAMERON MOORE,

               Plaintiff,

v.

SARAH SCHROEDER et al.,

               Defendants.

_____/

Case No. 2:23-cv-44

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Vitala, and Neubecker. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) Plaintiff's retaliation claims against Defendant Nurkala; (3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Thirteenth Amendment claims; and (5) Plaintiff's Fourteenth Amendment due process claims. Plaintiff's First Amendment retaliation claims against Defendants Schroderus and Schetter, as well as his Fourteenth Amendment equal protection claims against Defendants Schroderus and Nurkala, remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>**Discussion**</u>

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Sarah Schroeder, Assistant Deputy Warden Unknown Vitala, Prison Counselor Marsha Nurkala, Lieutenants Unknown Schroderus and Unknown Neubecker, and Correctional Officer Unknown Schetter. Plaintiff indicates he is suing Defendants in their official and personal capacities. (ECF No. 1, PageID.5–6.)

Plaintiff alleges that on September 8, 2022, he went through the classification process with Defendants Vitala and Nurkala. (*Id.*, PageID.7.) During that process, he was offered a job as a barber. (*Id.*) Plaintiff declined that job "due to being unemployable per MDOC policy" and having to wait until at least September 29, 2022, to "be even considered for a job." (*Id.*) Plaintiff contends that despite this, he was forced to work as a Level V barber without pay from September 12–15, 2022. (*Id.*)

On September 15, 2022, Plaintiff "received his first callout to work as the barber, and [was] given a barber certificate packet." (*Id.*) He contends that during his time as the barber, he was "denied access to his mandatory 2 hour recreational time in order to participate in his work detail." (*Id.*) Plaintiff contends that Defendants Schroeder and Schetter had a duty to "ensure Plaintiff was given his mandatory two hours of recreation per MDOC policy." (*Id.*) On September 15, 2022, Plaintiff "sent a kite to Defendant Schroeder requesting to be taken off the barber callout, with no response to date." (*Id.*)

On December 7, 2022, Plaintiff was working in the barbershop when Defendant Schetter told Plaintiff to "shut his f***ing mouth." (*Id.*) Plaintiff alleges this was in response to Plaintiff

explaining that he and prisoner Nottingham (another barber) were allowed to attend their recreational yard period. (*Id.*) Defendant Schetter told Plaintiff to "[g]et the f*** out" and "not be surprised if "[he] and prisoner Nottingham ended up strapped to a bed in segregation." (*Id.*, PageID.7–8.)

That same day, when Plaintiff returned to his housing unit, he spoke to Defendants Vitala and Nurkala "in the presence of prisoner Nottingham." (*Id.*, PageID.8.) Plaintiff "reported concerns to continue working as the level 5 barber, and requested to be taken off of the callout due to past and ongoing harassment from Defendant Schetter." (*Id.*) Plaintiff submitted a grievance regarding the issue as well. (*Id.*)

On December 8, 2022, Plaintiff was at yard when Defendant Schetter "yelled to Plaintiff and stated he was fired, and not to worry about coming back to work." (*Id.*) That same day, Defendant Schetter issued a "falsified Class II misconduct" to Plaintiff for being out of place "due to Plaintiff not reporting to . . . the barbershop out of fear of Defendant Schetter." (*Id.*)

On December 9, 2022, an officer directed Plaintiff to go to work as the barber. (*Id.*) When Plaintiff entered the barbershop, he asked Defendant Schetter, "What's going on? I thought I was fired?" (*Id.*) Defendant Schetter responded that "Plaintiff is indeed fired, but he had heard that Plaintiff was running his mouth about him." (*Id.*) Defendant Schetter also told Plaintiff that he "was just a little boy, and if he wanted to be a man, then he could step to the back room where there are no cameras." (*Id.*) Plaintiff contends this "exchange was made in the presence of prisoner Nottingham." (*Id.*) Plaintiff was then directed to leave the barbershop. (*Id.*) Plaintiff told his grandmother about the harassment and asked her to report it to the Warden. (*Id.*) His grandmother spoke to Administrative Assistant Farley (not a party), who said that "Plaintiff could be placed on

protective custody for his safety, but Plaintiff's best option would be to not get on staff's bad [side]." (*Id.*)

Later on December 9, 2022, Sergeant Allen (not a party) reviewed Plaintiff on another Class II misconduct issued by Defendant Schetter, "stating he gave Plaintiff a direct order to work, and he refused, which never occurred." (*Id.*)

On December 12, 2022, Plaintiff was in his cell when Defendant Schroderus approached and asked Plaintiff "why he was 'being such an asshole.'" (*Id.*) Defendant Schroderus told Plaintiff to "throw out all of his grievances because Plaintiff was being repetitive, and Defendant Schroderus had to investigate them." (*Id.*) Plaintiff explained that he was submitting grievances "due to him being harassed." (*Id.*, PageID.8–9.) Defendant Schroderus told Plaintiff that "things could and would get wors[e] . . . for him if he did not sign off on the grievances." (*Id.*, PageID.9.) Plaintiff did not sign off on his grievances; instead, he submitted one against Defendant Schroderus for "harassment and retaliation." (*Id.*)

On December 13, 2022, Sergeant Tikkonan (not a party) reviewed Plaintiff on a Notice of Intent (NOI) issued by Defendant Schroderus, claiming that another inmate (inmate Flores) had used Plaintiff's phone pin on December 8, 2022. (*Id.*) Plaintiff learned that Defendant Schroderus did not issue inmate Flores an NOI for the incident. (*Id.*) That same day, Plaintiff received another NOI, written by Defendant Schroderus, claiming that inmate Bonner called Plaintiff's grandmother to explain that "Plaintiff has continued to be harassed, and can no longer use the phone." (*Id.*)

That same day, Plaintiff appeared before Defendant Neubecker for misconduct proceedings on the two Class II misconducts issued by Defendant Schetter. (*Id.*) Plaintiff was "given the maximum amount of sanctions for each misconduct equally up to 60 days of LOP (Loss of Privileges)." (*Id.*)

On December 19, 2022, Defendant Nurkala sanctioned Plaintiff to 60 days' phone restriction for the first NOI issued by Defendant Schroderus, and 90 days' phone restriction for the second. (*Id.*) Plaintiff later learned that inmate Bonner was given only 30 days' phone restriction and that inmate Flores never received an NOI. (*Id.*)

On January 4, 2023, the MBP administration sent a JPay message to the entire prison population, which stated: "Effective immediately, limit of a 30 day phone restriction on the first NOI has been removed from the orientation packet." (*Id.*) Plaintiff contends this occurred after Plaintiff "wrote Defendant Schroder multiple times regarding the amount of phone restriction he received." (*Id.*) On February 15, 2023, Plaintiff asked Defendant Schroderus "what it would take to find level ground." (*Id.*) Defendant Schroderus responded that Plaintiff should "drop all of his grievances because Plaintiff was making the wrong people mad, especially when Plaintiff had his grandmother contact the facility and Michigan State Police to report the harassment, retaliation, and discrimination that Plaintiff was/is going through." (*Id.*)

Based on the foregoing, Plaintiff asserts claims for relief under the First, Eighth, and Thirteenth Amendments. (*Id.*, PageID.11–12.) Plaintiff also asserts Fourteenth Amendment equal protection claims. (*Id.*) Additionally, the Court construes Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon the allegedly false misconducts and NOIs, as well as upon Plaintiff's allegation that he did not receive pay for a period of time despite serving as the barber. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.13.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted above, Plaintiff sues Defendants in both their official and personal capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the

governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff's official capacity claims for damages will, therefore, be dismissed.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the

doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff does not allege that any named Defendant is involved in an ongoing violation of federal law, and he does not seek any relief that could be properly characterized as prospective. Plaintiff, therefore, cannot maintain claims for injunctive and declaratory relief against Defendants in their official capacities.

In sum, for the reasons set forth above, Plaintiff's official capacity claims against all Defendants will be dismissed.

### B.     Personal Capacity Claims

#### 1.     Claims Against Defendant Schroeder

Plaintiff has named Warden Schroeder as a Defendant because she is the "highest authority responsible for the employment and oversight of facility[] staff and oversight of facility[] operations generally." (ECF No. 1, PageID.5.) He also notes that she is the "final Appellate authority over inmate institutional grievances and concerns within the facility." (*Id.*) Overall, Plaintiff appears to suggest that, as Warden, Defendant Schroeder is ultimately liable for the constitutional violations discussed below.

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege facts suggesting that Defendant Schroeder encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff suggests that: (1) Defendant Schroeder was responsible for ensuring that he received recreation time; (2) Defendant Schroeder did not respond to his kite requesting to be taken off of the barber callout; and (3) Defendant Schroeder upheld the LOP and phone restriction sanctions imposed. As noted above, denying a grievance and failing to act based upon information

presented in a grievance is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Schroeder was personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's claims against Defendant Schroeder.

### 2.    First Amendment

Plaintiff alleges that Defendants Schroderus, Schetter, Nurkala, Vitala, and Neubecker retaliated against him, in violation of the First Amendment, because of Plaintiff's grievance activity.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.    Protected Conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected

activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Here, Plaintiff alleges that on December 7, 2022, he spoke to Defendants Vitala and Nurkala to "report[] concerns [about] . . . working as the level 5 barber, and [to] request[] to be taken off of the callout due to past and ongoing harassment from Defendant Schetter." (ECF No. 1, PageID.8.) Plaintiff also submitted a grievance about Defendant Schetter that same day. (*Id.*) He submitted a grievance against Defendant Schroderus on December 12, 2022. (*Id.*, PageID.9.) Plaintiff, therefore, has adequately alleged that he engaged in protected conduct for purposes of his retaliation claims.

### b.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff alleges that he was fired from his job as a barber, received two Class II misconducts, and received two NOIs regarding the use of his phone pin, and that he ultimately was sanctioned with 60 days' LOP and 150 days' phone restriction. All of these rise to the level of adverse action for purposes of Plaintiff's retaliation claims. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[ ] an adverse action"); *Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (noting that "the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation"); *see also Bradley v. Conarty*, No. 17-2340, 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018) (noting that "the loss of a prison job can in some circumstances be deemed an adverse action for purposes of a retaliation claim").

With respect to Defendants Nurkala, Vitala, and Neubecker, however, Plaintiff merely alleges the ultimate fact of retaliation. Plaintiff contends that Defendants Nurkala and Neubecker retaliated against him by sanctioning him to LOP and phone restrictions when they presided over the proceedings for his misconduct charges and NOIs. Plaintiff, however, has alleged no *facts* from which the Court could infer that Defendant Neubecker was aware of Plaintiff's protected conduct and sanctioned him to 60 days' LOP because of such conduct. Moreover, although Defendant Nurkala sanctioned Plaintiff to a total of 150 days' phone restriction on December 19, 2022, 12 days after Plaintiff orally complained to her about Defendant Schetter's behavior, Plaintiff's complaint is devoid of *facts* from which the Court could infer that Defendant Nurkala's decision to impose the phone restriction was motivated by Plaintiff's protected conduct. Instead, the factual allegations in Plaintiff's complaint show that Defendants Nurkala and Neubecker issued these sanctions while they were presiding over the proceedings for Plaintiff's misconduct charges and

NOIs. The fact that Plaintiff disagrees with the imposition of these sanctions during these proceedings does not make them retaliatory. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *See Murphy*, 833 F.2d at 108. With respect to Defendant Vitala, Plaintiff suggests that he failed to act upon Plaintiff's complaints and grievances regarding Defendant Schetter's behavior, as well as the sanctions imposed upon Plaintiff. Plaintiff's complaint, however, is devoid of any *facts* from which the Court could infer that he took any adverse action against Plaintiff because of Plaintiff's protected conduct. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff's First Amendment retaliation claims against Defendants Nurkala, Vitala, and Neubecker will, therefore, be dismissed.

Plaintiff alleges that on December 8, 2022, a day after Plaintiff complained about harassment and submitted a grievance about such, Defendant Schetter issued a falsified Class II misconduct and also told Plaintiff he was fired. (ECF No. 1, PageID.8.) On December 9, 2022, Defendant Schetter told Plaintiff that he had "heard that Plaintiff was running his mouth about him." (*Id.*) Defendant Schetter also issued Plaintiff a second falsified Class II misconduct. (*Id.*)

Taking these allegations as true and in the light most favorable to Plaintiff, the Court may not dismiss Plaintiff's retaliation claim against Defendant Schetter on initial review.

Finally, Plaintiff alleges that on December 12, 2022, Defendant Schroderus told Plaintiff to throw out all of his grievances, and told Plaintiff that things would get worse "if he did not sign off on the grievances." (*Id.*, PageID.9.) Plaintiff did not sign off on the grievances; instead, he filed a grievance against Defendant Schroderus. (*Id.*) The next day, Plaintiff received two NOIs from Defendant Schroderus regarding the alleged misuse of Plaintiff's phone pin. (*Id.*) Again, taking these allegations as true and in the light most favorable to Plaintiff, the Court may not dismiss Plaintiff's retaliation claim against Defendant Schroderus on initial review.

### 3.    Eighth Amendment

Plaintiff suggests that Defendants Schroderus, Schetter, Nurkala, Vitala, and Neubecker violated his Eighth Amendment rights in various ways. Specifically, he alleges that his Eighth Amendment rights were violated by: (1) being forced to work as the barber and not being paid for a three-day period; (2) not receiving yard time while working as the barber; (3) Defendant Schetter's verbal harassment; (4) the issuance of false misconducts and NOIs; and (5) being sanctioned to LOP and phone restrictions.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

17

### a.   Placement as Barber and Lack of Pay

First, Plaintiff suggests that Defendants Vitala and Nurkala violated his Eighth Amendment rights by forcing him to work as the barber and by not paying him for a three-day period during that time. The fact that Plaintiff was "forced" into a job and was not paid for a three-day period does not implicate any deprivations of "essential food, medical care, or sanitation," or "other conditions intolerable for prison confinement." *See Rhodes*, 452 U.S. at 348 (citation omitted); *cf. Smith v. Sapp*, Nos. 97-5642, 97-5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1988) (noting that "[f]orcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim"). Accordingly, Plaintiff's Eighth Amendment claims against Defendants Vitala and Nurkala premised upon these allegations will be dismissed.

### b.   Lack of Yard Time

Plaintiff contends that Defendant Schetter violated his Eighth Amendment rights by denying him his "mandatory two hours of recreation" per MDOC policy. (ECF No. 1, PageID.7.) According to Plaintiff, he did not receive yard time because he was "forced" to work as the barber for Level V. (*Id.*)

The Eighth Amendment entitles prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). Thus, the Sixth Circuit has held that extreme limitations on outdoor exercise could potentially violate the Eighth Amendment. *See Rodgers v. Jabe*, 43 F.3d 1082, 1087–88 (6th Cir. 1995) (citing *Walker*, 771 F.2d at 927; *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983)). Yet, the Sixth Circuit has declined to find that minimum yard time is constitutionally required in all circumstances. *Rodgers*, 43 F.3d at 1087–88. Instead, the Sixth Circuit has held that when yard time is extremely limited

or denied altogether, the prison may be required to provide a legitimate penological purpose for the deprivation. *Id.* (citing *Patterson*, 717 F.2d at 289).

As an initial matter, Plaintiff's complaint itself does not suggest a total denial of yard time, as he alleges that he was "on yard" on December 8, 2022, when Defendant Schetter yelled at him and told him that he was fired. (ECF No. 1, PageID.8.) In any event, Plaintiff does not allege that he was unable to exercise indoors or that he suffered any ill effects from any limitations on yard privileges. Plaintiff's allegations suggest only an inconvenience that does not rise to the level of an Eighth Amendment violation. *See, e.g.*, *May v. Baldwin*, 109 F.3d 557, 565–66 (9th Cir. 1997) (holding that the denial of out-of-cell exercise for 21 days did not rise to an Eighth Amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) (noting that "[d]enial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (concluding that there was no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days). Thus, Plaintiff's Eighth Amendment claim against Defendant Schetter premised upon a denial of yard time will be dismissed.

### c.     Verbal Harassment

Plaintiff suggests that Defendant Schetter violated his Eighth Amendment rights by verbally harassing him. While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment asserted by Plaintiff.

19

#### d.      Receipt of Misconducts and NOIs

Plaintiff also suggests that Defendants Schetter and Schroderus violated his Eighth Amendment rights by issuing allegedly false misconducts and NOIs. However, the filing of allegedly false misconducts and NOIs does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). Thus, these Eighth Amendment claims against Defendants Schetter and Schroderus will be dismissed.

#### e.      Receipt of LOP and Phone Restrictions as Sanctions

Finally, Plaintiff contends that his Eighth Amendment rights were violated when Defendant Neubecker sanctioned him to 60 days' LOP and when Defendant Nurkala sanctioned him to a total of 150 days' phone restriction. This is simply not so. Plaintiff does not allege or show that he was denied any basic human needs or requirements as a result of his placement on LOP and phone restriction. Such claims will, therefore, be dismissed.

#### 4.      Thirteenth Amendment

Plaintiff suggests that Defendants violated his rights under the Thirteenth Amendment because they forced him to "work a time period with no pay" and would not allow him to quit the barber job. (*Id.*, PageID.11–12.)

The Thirteenth Amendment provides, in pertinent part: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. As set forth specifically in the Thirteenth Amendment, the Amendment does not apply to persons "duly convicted" of a crime. *See Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999) ("The Thirteenth Amendment, which forbids involuntary servitude, has an express exception for persons imprisoned pursuant to conviction for crime."). Plaintiff does not allege that he was not

"duly convicted." Moreover, the MDOC's Offender Tracking Information System (OTIS) indicates that Plaintiff is currently serving sentences for five offenses, and that his earliest possible release date is March 8, 2030. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNum ber=109353 (last visited Mar. 20, 2023). Plaintiff's Thirteenth Amendment claims will, therefore, be dismissed.

### 5.    Fourteenth Amendment

#### a.    Due Process—Job Placement

The Court has construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim premised upon Plaintiff's allegation that Defendants Vitala and Nurkala forced him to work as the barber, as well as his allegation that he did not receive pay for a three-day period.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v.Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's claim fails at the first step, however, because "no prisoner has a constitutional right to a particular job or to any job." *See Ivey*, 832 F.2d at 955; *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property

right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's alleged forced placement in the barber job and the failure to pay him for a three-day period did not trigger a right to due process, and any Fourteenth Amendment due process claims premised upon such will be dismissed.

**b.      Due Process—False Misconducts and NOIs**

The Court has also construed Plaintiff's complaint to assert that Defendants Schetter and Schroderus violated Plaintiff's Fourteenth Amendment procedural due process rights by issuing allegedly false misconducts and NOIs, and that Defendants Neubecker and Nurkala violated his procedural due process rights by sanctioning him on those allegedly false misconducts and NOIs.

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

Here, Plaintiff indicates that he was found guilty of two Class II misconducts, one for being out of place and one for disobeying a direct order. (ECF No. 1, PageID.8.) Plaintiff was not, and could not have been, denied good time or disciplinary credits as a result of his class II misconduct convictions. *See* MDOC Policy Directive 03.03.105, ¶ DDDD. The United States Court of Appeals for the Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.

*See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, the 60 days of LOP, which Plaintiff received as a result of the Class II misconducts, does not constitute an "atypical and significant" deprivation under *Sandin*. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue*, 80 F. App'x at 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation).

Furthermore, Plaintiff received a total of 150 days of phone restriction because of the NOIs. The imposition of the phone restriction, however, did not violate Plaintiff's due process rights. *See, e.g.*, *Anderson v. Barrows*, No. 2:19-cv-3631, 2019 WL 4451536, at *2 (S.D. Ohio Sept. 17, 2019) (dismissing plaintiff's due process claim premised upon "his inability to access a phone to call his family"); *Allen v. Alexsander*, No. 2:16-cv-245, 2017 WL 2952929, at *5 (W.D. Mich.

July 11, 2017) (concluding that a 90-day phone restriction did not implicate a liberty interest); *Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (finding that a 6-month restriction on telephone privileges did not amount to an atypical or significant hardship that would trigger due process protections); *Adorno v. Semple*, No. 3:16-cv-325, 2016 WL 7469709, at *7 (D. Conn. Dec. 28, 2016) (concluding that "any Fourteenth Amendment claim based on an inability to make a telephone call is without merit").

In sum, Plaintiff's due process rights were not violated when he was issued and sanctioned on two Class II misconducts and two NOIs. Accordingly, any intended Fourteenth Amendment procedural due process claims will be dismissed.

### c.      Substantive Due Process

To the extent Plaintiff has raised substantive due process claims regarding the allegedly false misconducts and NOIs, he fails to state such a claim.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff.

24

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments, as well as the Fourteenth Amendment's protections regarding procedural due process and equal protection, apply to Plaintiff's claims for relief. Consequently, any intended substantive due process claim will be dismissed.

### d.      Equal Protection

Plaintiff suggests that Defendants Schroderus and Nurkala violated his Fourteenth Amendment equal protection rights regarding the issuance of the NOIs and resulting phone sanctions. Specifically, with respect to the first NOI issued, Plaintiff contends that Defendant Schroderus did not issue an NOI to inmate Flores, even though inmate Flores was the individual who used Plaintiff's phone pin. (ECF No. 1, PageID.9.) With respect to the second NOI, Plaintiff alleges that he received 90 days' phone restriction, whereas Defendant Nurkala sanctioned inmate Bonner, the individual who used Plaintiff's phone pin, to only 30 days' phone restriction. (*Id.*)

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it

interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff's allegations do not implicate a fundamental right, and he does not allege that he is a member of a suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'")(quoting *Club Italia Soccer & Sports Org., Inc.*

*v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006))). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

As noted above, Plaintiff suggests that he and inmates Flores and Bonner are similarly situated because inmates Flores and Bonner are the ones that used Plaintiff's phone pin, resulting in the issuance of the NOIs. Despite that, Plaintiff alleges that Defendant Schroderus did not issue inmate Flores an NOI. Moreover, although inmate Bonner received an NOI, Defendant Nurkala sanctioned him to only 30 days' phone restriction, much less than the 90 days received by Plaintiff. Taking these allegations as true and in the light most favorable to Plaintiff, the Court concludes that Plaintiff's Fourteenth Amendment equal protection class-of-one claims against Defendants Schroderus and Nurkala may not be dismissed on initial review. *See Porter v. Washington*, No. 1:22-cv-311, 2022 WL 2037942, at \*11 (W.D. Mich. June 7, 2022) (concluding that a disabled inmate set forth plausible class-of-one claims when he was found guilty of disobeying a direct order, but another inmate, who was also disabled, had his guilty finding dismissed for disobeying the same order).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schroeder, Vitala, and Neubecker will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) Plaintiff's retaliation claims against Defendant Nurkala;

(3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Thirteenth Amendment claims; and (5) Plaintiff's Fourteenth Amendment due process claims. Plaintiff's First Amendment retaliation claims against Defendants Schroderus and Schetter, as well as his Fourteenth Amendment equal protection claims against Defendants Schroderus and Nurkala, remain in the case.

An order consistent with this opinion will be entered.

Dated:   March 30, 2023                          /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge